**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ATHENA SECURITY, LLP,<br><br>                Plaintiff,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE<br>COMPANY,<br><br>                Defendant. | Civil Action No. 2:25-cv-001252-JRG<br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION TO**
**TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     PROCEDURAL AND FACTUAL BACKGROUND.......................................... 2

        A.     Plaintiff Athena Security, LLP ("Athena")............................................ 2

        B.     Asserted Patents and Assignment Histories.......................................... 2

        C.     HPE, the Accused Products, and HPE's Relevant Employees .............. 3

               1.     '357 Patent Accused Products ...................................... 3

               2.     '880 Patent Accused Products ...................................... 4

               3.     '299 Patent Accused Products ...................................... 6

               4.     Uncharted Products Identified in Athena's Contentions ........... 6

        D.     Prior Art to the Asserted Patents........................................................... 7

        E.     Other Relevant Third-Party Witnesses ................................................. 8

III.    LEGAL STANDARDS ....................................................................................... 8

IV.     ARGUMENT........................................................................................................ 9

        A.     Cost of Attendance for Willing Witnesses............................................. 9

        B.     Availability of Compulsory Process to Secure the Attendance of Witnesses ...... 12

        C.     Relative Ease of Access to Sources of Proof ........................................ 13

        D.     All other practical problems................................................................... 13

        E.     Local interest factor .............................................................................. 14

        F.     Administrative Difficulties Flowing from Court Congestion ............... 15

        G.     Familiarity of the Forum with the Governing Law................................ 15

        H.     Avoidance of Conflict of Laws or Application of Foreign Law............ 15

V.      CONCLUSION.................................................................................................... 15

██████████████

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bianco v. Globus Med., Inc.*,
No. 2:12-cv-147-JRG, 2012 WL 5610371 (E.D. Tex. Nov. 15, 2012) ...............................9, 15

*Edge Networking Sys. LLC v. Amazon.com, Inc.*,
No. 2:24-cv-00887-JRG-RSP, 2026 WL 660570 (E.D. Tex. Mar. 9, 2026) ..........................15

*Farmobile LLC v. Farmers Edge Inc.*,
No. 2:21-cv-411-JRG, 2022 WL 2653893 (E.D. Tex. July 7, 2022)......................................12

*Fortinet, Inc. v. Forescout Techs., Inc.*,
3:20-cv-03343-EMC, ECF No. 1 (N.D. Cal. May 15, 2020) .........................................3, 8, 14

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ...................................................................................11, 15

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).................................................................................9, 13

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ....................................................................................15

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ....................................................9

*In re Honeywell Int'l Inc.*,
No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024) ...............................................13, 14

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) .....................................................................................14

*In re Radmax, Ltd.*,
720 F.3d 285 (5th Cir. 2013) ....................................................................................9, 13

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ........................................................................................9

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ....................................................................................10, 13

*In re VirtaMove, Corp.*,
No. 2025-130, 2025 WL 2618803 (Fed. Cir. Sept. 11, 2025) ..........................................12, 15

*In re Volkswagen of Am., Inc.*,
　545 F.3d 304 (5th Cir. 2008) (en banc) ..........................................................................8, 9, 10

*In re Zimmer Holdings, Inc.*,
　609 F.3d 1378 (Fed. Cir. 2010)..............................................................................................14

*Mohamed v. Mazda Motor Corp.*,
　90 F. Supp. 2d 757 (E.D. Tex. 2000)........................................................................................9

**STATUTES & AUTHORITIES**

28 U.S.C. § 1404................................................................................................................1, 8, 9

Fed. R. Civ. P. 45(c)(1)(A), (B)(ii) ................................................................................................12

■■■■■■■■■

## I.    INTRODUCTION

Defendant Hewlett Packard Enterprise Company ("HPE") respectfully seeks transfer to the Northern District of California ("NDCA") pursuant to 35 U.S.C. § 1404. On the unique facts of this case, NDCA is the clearly more convenient forum.

All three asserted patents, U.S. 8,250,357 ("'357 Patent"), 7,969,880 ("'880 Patent"), and 9,369,299 ("'299 Patent") *have significant ties to NDCA*. Until just last year, the patents were all owned by NDCA-based Fortinet Inc., which HPE understands would have extensive information in NDCA relevant to key issues, such as inventorship, invalidity, licensing, ownership, and marking. Fortinet also asserted the '299 Patent in patent litigation until last year in NDCA against another NDCA company, and the NDCA court made multiple in-depth substantive rulings about the patent's scope and validity. Moreover, the ties between the '357 Patent and NDCA go back decades, before its acquisition by Fortinet, when it was allegedly developed at another NDCA company, by three inventors who remain in NDCA today.

The overwhelming majority of HPE's evidence related to the accused products—including witnesses, documents, and physical components and devices—is also in northern California. Of HPE's U.S.-based employees who work on the accused products, *nearly* ■■ *work from NDCA, with another* ■■■ *in nearby Roseville, California*. HPE also works closely with ■■■■■, an NDCA company, and its employees in NDCA, to procure components for the accused products. By contrast, *zero HPE employees or third parties have unique knowledge in EDTX*.

Ultimately, no relevant transfer factor supports keeping this case in EDTX, and *six* of the eight relevant transfer factors—witness costs, compulsory process, sources of proof, local interest, practical problems and familiarity with the law—strongly favor moving this case to NDCA.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    Plaintiff Athena Security, LLP ("Athena")

Athena is based in Gardnerville, Nevada. Dkt. 33, ¶ 2. Its sole managing partner, identified as "P Hardigan," is also located in Nevada. Ex. 1. Athena has no known operations in any other state and does not allege it practices the asserted patents.

### B.    Asserted Patents and Assignment Histories

*'357 Patent:* The '357 Patent names three inventors, who all currently reside in NDCA. *See* Dkt. 33, Ex. 1; Ex. 2; Ex. 3; Ex. 4. At the time of the patent's filing, the inventors also resided in NDCA and were employees of NDCA-based Cosine Communications Inc. ("CoSine"), where they "contributed to all areas of engineering." Ex. 3; *see also* Ex. 5. In April 2001, inventor Mr. Kiho Yum joined Juniper (now HPE), also in NDCA, ███████████████████. Ex. 6. In 2006, CoSine sold its remaining assets, including the '357 Patent and the product that allegedly embodies the '357 Patent, to Fortinet in NDCA. *See* Ex. 7; Ex. 8. In 2025, Fortinet transferred the patent to Athena via intermediary Palisade Technologies, LLP, all outside of Texas. Ex. 9; Ex. 10.

*'880 Patent:* The '880 Patent names four inventors, all of whom worked in Japan for Japanese company Alaxala Networks Corp. ("Alaxala") at the time of the patent's filing. Dkt. 33, Ex. 3; Ex. 11. NDCA-based Fortinet acquired Alaxala in 2022, including all of Alaxala's products and assets, and Alaxala now operates as a Fortinet subsidiary. Ex. 12. Athena acquired the '880 Patent in 2025 via Palisade. Ex. 9; Ex. 10.

*'299 Patent:* The '299 Patent names three inventors, who worked for original assignee Bradford Networks, Inc. in New Hampshire at the time of the patent's filing. *See* Dkt. 33, Ex. 5. Fortinet acquired Bradford Networks and its patents in 2018. *See* Exs. 13; 14. The '299 Patent was assigned from Fortinet to Palisade to Athena in 2025. Ex. 9; Ex. 10.

**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 2**

In 2020, Fortinet filed a lawsuit in NDCA alleging infringement of the '299 Patent by NDCA-based Forescout Technologies, Inc. *See Fortinet, Inc. v. Forescout Techs., Inc.*, 3:20-cv-03343-EMC, ECF No. 1 (N.D. Cal. May 15, 2020) ("NDCA 3343 Litigation"). The court (Judge Edward M. Chen) held a technology tutorial in July 2022 and a *Markman* hearing two months later, made substantive determinations regarding the '299 Patent, including a *Markman* order in November 2022 and orders on motions for summary judgment in 2024, and received trial briefs, pretrial conference statements, and various motions *in limine* from the parties. *See, e.g.*, *id.*, ECF Nos. 55, 160, 170, 174, 335, 367-375. The case was dismissed one week before the final pretrial conference in early 2025. *Id.*, ECF No. 392 (N.D. Cal. Feb. 6, 2025).

### C.    HPE, the Accused Products, and HPE's Relevant Employees

HPE is incorporated in Delaware and has its corporate headquarters in Spring, Texas, outside this district. As described below, the overwhelming majority of HPE's employees with responsibilities related to the accused products work from HPE's large northern California offices or from Bangalore, India, with all expected witnesses in northern California. *See* App. A.

### 1.    '357 Patent Accused Products

In its contentions, Athena charts a single product family for the '357 Patent—the Juniper SRX series firewall products, and specifically IP Security ("IPSec") functionality in those products. Ex. 15. HPE acquired Juniper, headquartered in NDCA, in 2025. The vast majority of work related to the SRX products is performed in NDCA or Bangalore, and the leaders of SRX product functions work in HPE's Sunnyvale or San Jose offices (both in NDCA).

In particular, HPE's declarant and Vice President for SRX product management, Mr. Kedar Dhuru, works from Sunnyvale, along with ███████ of his relevant reports—████ of whom work in Texas. Ex. 16 ("Dhuru Decl."). Likewise, HPE's Senior Vice President who leads all engineering and development for SRX, Mr. Ashwin Kovummal, works from Sunnyvale, and the vast majority

of his reports are in Sunnyvale or Bangalore. Dhuru Decl., ¶ 7; Ex. 17. Indeed, ■ of Mr. Kovummal's over ■ reports work from Sunnyvale, and only ■ works from Texas— ■ with the same functions as California counterparts and who has no unique knowledge relevant to the SRX products. Dhuru Decl., ¶ 8; Ex. 17

Marketing and finance functions for SRX are also in NDCA—not Texas. Mr. Jeff Olson leads the marketing team from San Jose, and ■ reports work from California. Dhuru Decl., ¶ 10; Ex. 18. Mr. Abraham Kuruvilla, who leads the finance team for SRX, works from Sunnyvale, and his relevant reports also work from California. Dhuru Decl., ¶ 12; Ex. 19.

Customer service and support is performed by a ■ person global team that works on many products, not just SRX. Dhuru Decl., ¶ 14; Ex. 20. The team reports to Mr. Derrell James, who himself has no unique SRX responsibilities but has ■ reports that spend a majority of their time supporting SRX. *See* Dhuru Decl., ¶ 15. ■ of those reports resides in EDTX, and ■ providing remote support only and has the same function as (and no unique knowledge compared to) ■ California counterparts. *Id*.

In addition to witnesses, relevant Juniper source code is stored in NDCA, ■ ■—*not* Texas—and engineering, marketing, and product management documents for SRX products are created by the relevant teams in NDCA. *See* Dhuru Decl., ¶ 9.

### 2.    '880 Patent Accused Products

Athena's infringement contentions include a single chart for a single product family for the '880 Patent—the Aruba CX network switches, and specifically Link Aggregation Group ("LAG") functionality in those switches. Ex. 21. The vast majority of work related to this functionality is performed in northern California or Bangalore, and the leaders of CX functions are all based in San Jose, California (in NDCA) or Roseville, California (in EDCA, about 100 miles from NDCA). *See* Ex. 22 (NDCA courthouse 102 miles from HPE's Roseville office).

██████████████████

Specifically, HPE's declarant and Vice President for CX product management, Mr. Ed Chang, is based in San Jose, with the majority of his reports in San Jose or Roseville, and ████ in Texas. Ex. 23 ("Chang Decl."), ¶¶ 4-5.; Ex. 24. HPE's Vice President of engineering, Frank Reichstein, who leads software design and development for LAG functionality, also works from Roseville with the majority of his reports in Roseville, San Jose, or Bangalore—████ are in Texas. Chang Decl., ¶ 14; Ex. 25.

HPE's Vice President of engineering, Mr. Brian Dowling, who leads the design and development of Application-Specific Integrated Circuits ("ASICs") implementing the accused LAG functionality, also works from Roseville. Chang Decl., ¶¶ 9-10; Ex. 26. The CX products include either ██████ ASICs or proprietary HPE ASICs. For ██████ ASICs, HPE interfaces with ██████ employees in NDCA regarding design and development. Chang Decl., ¶ 13. Design and development of HPE's proprietary ASICs also occurs in NDCA, led by one of Mr. Dowling's reports, Mr. Debashis Basu, who works from Sunnyvale with a team of over ████ engineers in Roseville or San Jose—and ████ in Texas. *Id.*, ¶ 9; Ex. 27.

Mr. Dave Chen, who leads CX marketing, works in Los Angeles and his reports work from NDCA. Chang Decl., ¶ 16. Financial functions for CX are led by Mr. Salman Asif, who works from Spring, Texas (in the Southern District of Texas) and leads a team of international reports. *Id.*, ¶ 18. The customer service and support team for CX products is led from San Jose by Michael Cosgrove, with employees across the country. *See id.*, ¶ 20. Of Mr. Cosgrove's ████ reports, ████ ████ work from EDTX—all work remotely and perform the same functions as (and lack unique knowledge compared to) their California counterparts. *See id.*, ¶¶ 20-23; Ex. 28.

Other key evidence for the CX products is in California as well. HPE has multiple switching laboratories in Roseville, where CX network switches are designed, developed, and

**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 5**

tested. Chang Decl., ¶ 11. Relevant engineering, marketing, and product management documents are created by the relevant teams in Roseville, California. *Id.*, ¶ 12.

### 3.    '299 Patent Accused Products

Athena accuses HPE's Aruba ClearPass suite (and purports to accuse compatible hardware) of infringing the '299 Patent. *See* Ex. 29, at 4-5. The vast majority of work related to these products is performed in northern California or Bangalore, and the leaders of ClearPass functions are based in San Jose (in NDCA), Roseville, California, or work remotely outside of Texas.

Specifically, Senior Director of engineering, Mr. Chip Bering, leads design and development for ClearPass, including the hardware products it runs with and/or operates on, and works from San Jose along with ███████ his reports, ███ of which work from Texas. Ex. 30 ("Lechner Decl."), ¶ 10; Ex. 31. Product management is led by Mr. Bryan Lechner, who is a remote worker based in ████████ Minnesota. Lechner Decl., ¶ 4. All of Mr. Lechner's U.S.-based reports with responsibilities related to ClearPass work in San Jose. *Id.*, ¶ 5. Messrs. Olson, Kuruvilla, and Cosgrove, described above in reference to the SRX and CX products, also have marketing, financial, and customer service and support responsibilities, respectively, for ClearPass—all of which is focused in northern California. *See* § II.C.1-2.

ClearPass source code and engineering, marketing, and product management documents for ClearPass are created by the relevant teams in NDCA. Lechner Decl., ¶ 11.

### 4.    Uncharted Products Identified in Athena's Contentions

Athena's infringement contentions also purport to accuse five additional HPE product families—HPE MSR routers and Juniper EX switches for the '357 Patent and Juniper QFX switches, EX switches, MX routers, and PTX routers for the '880 Patent. *See* Exs. 29, 15, & 21. Athena, however, provides no claim charts for these products or any allegations whatsoever regarding why the charted products (in entirely different families) are representative of the five

██████████████

uncharted families.[1] That said, U.S. work on these five other product families is also largely based in northern California, and the products have no ties to Texas.

First, the uncharted Juniper products—QFX, MX, PTX, and EX—are all designed and developed in NDCA and Bangalore. Product management for all four families is led from Sunnyvale. Dhuru Decl., ¶ 16. Of the ██ total product management team members for these products, nearly ███ are in NDCA, and ███████ work remotely in Texas. *See* Ex. 32 (QFX), Ex. 33 (MX), Ex. 34 (PTX); Ex. 35 (EX). The LAG functionality for these products (which HPE anticipates Athena intends to accuse) is developed by teams in NDCA and Bangalore. Dhuru Decl., ¶ 7. Of the █████ relevant engineers in these groups, █████████████ are in NDCA, and █████ ███████████████ in Texas. Ex. 36; Ex. 37; Ex. 38; Ex. 39. And, similar to the SRX and CX products, marketing and product financials functions for these other product families are largely in California as well. *See* Chang Decl., ¶ 10; Dhuru Decl., ¶ 10.

Second, the uncharted HPE MSR products have no connection to Texas. ██████████ ██████████████████████████████████████████████████████████ ████. *See* Ex. 40 ("Sugarman Decl."). ████████ HPE employees have relevant knowledge of these products, whether current or past. *See id.*, ¶¶ 3 & 7. ██████ are located in Texas. *Id.*, ¶ 8. █████ are located in northern California, as is the individual responsible for MSR product financials, Mr. Kuruvilla. *Id.*; Ex. 19; Dhuru Decl., ¶ 12.

### D.    Prior Art to the Asserted Patents

Extensive prior art evidence also is located in California. Information about HPE's own Enterprise Trust and Identity Policy System ("eTIPS") prior art, Junos OS prior art, M-, T-, and J-Series router prior art, and ProCurve prior art is located in NDCA, including multiple witnesses

---

[1] HPE intends to move to strike these improperly accused products.

knowledgeable, such as Pattabhi Attaluri, Truman Joe, and Michael Patmon. Ex. 41. The founder of CoSine, Dean Hamilton, is in San Diego and is expected to have information about prior art, including the IPSX system, which was acquired by Fortinet and commercialized before the '357 Patent was filed. Ex. 42; Ex. 43. NDCA-based Forescout also will have evidence regarding its CounterACT system, which was asserted as system art to the '299 Patent in the recent NDCA 3343 Litigation. *See* Ex. 44, at 2. Additionally, numerous highly relevant prior artists are also based in NDCA, including the authors of the IPSec prior art to the '357 Patent (Bryan Gleeson, Arthur Lin, Eric Rosen), and a Broadcom engineer on LAG-related prior art to the '880 Patent (Mohan Kalkunte). *See* Exs. 45-48.

### E. Other Relevant Third-Party Witnesses

In addition to all of HPE's expected party witnesses and numerous prior artists in northern California, several other relevant third parties are in NDCA (*see* App. A), including:

- the inventors of the '357 Patent, who have material knowledge about at least conception, reduction to practice, inventorship, ownership, invalidity, and prosecution, *see* § II.B;

- Fortinet, the prior owner of all asserted patents, who has material information about prior assertions of the asserted patents, conception, reduction to practice, invalidity, prosecution, licensing, marking, inventorship, ownership, and damages, *see* § II.B; and

- ▇▇▇▇▇▇ in NDCA provides ASICs for certain of the accused CX products and possesses technical information relevant to infringement issues. *See* Chang Decl., ¶ 13.

### III. LEGAL STANDARDS

For the convenience of parties and witnesses and in the interest of justice, a district court may transfer any action to any other district where the case "might have been brought[.]" *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (quoting 28 U.S.C. § 1404(a)). Once that threshold is met, courts determine if the transferee venue is "clearly more

<u>**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**</u> – **Page 8**

convenient" by weighing the relative convenience of each venue, considering: (1) access to sources of proof; (2) availability to secure the attendance of witnesses; (3) cost of attendance for witnesses; (4) other practical problems making trial easy, expeditious and inexpensive; (5) administrative difficulties from court congestion; (6) local interest to decide localized issues; (7) forum's familiarity with the governing law; and (8) avoidance of conflict of laws or foreign law. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (quoting *Volkswagen*, 545 F.3d at 315).

## IV.     ARGUMENT

This action could have been brought, and should have been brought, in NDCA. HPE is subject to personal jurisdiction in NDCA and maintains substantial operations there. § II.C. NDCA has already conducted a *Markman* hearing and issued substantive orders concerning one of the asserted patents in a case that nearly reached trial. All told, six of the eight relevant factors favor moving this case to NDCA. None weighs against transfer. Transfer is warranted under these unique facts. *See In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021).

### A.     Cost of Attendance for Willing Witnesses

The convenience of witnesses is "probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The inquiry focuses on "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The convenience of non-party witnesses is accorded even greater weight than parties in the transfer analysis. *Bianco v. Globus Med., Inc.*, No. 2:12-cv-147-JRG, 2012 WL 5610371, at *4 (E.D. Tex. Nov. 15, 2012) (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000)). The Fifth Circuit's "100-mile rule" recognizes that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance

HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 9

███████████████

to be traveled." *Volkswagen*, 545 F.3d at 317; *see also In re TikTok, Inc.*, 85 F.4th 352, 361–62 (5th Cir. 2023) (applying *Volkswagen* and recognizing that NDCA is clearly more convenient than a Texas court for witnesses located in China).

**Non-party witnesses.** Here, more than ten third parties with key, unique knowledge or evidence relevant to one or more issues in this case are located in NDCA. *See* §§ II.D-E. These include critical witnesses that are expected to give testimony at trial. For example, HPE's defenses will require testimony from Fortinet, the recent prior owner of all asserted patents, who has extensive history acquiring, asserting, and enforcing the asserted patents. § II.E. Fortinet will also have highly relevant documents and testimony related to marking, invalidity (including products that Fortinet acquired related to the patents), prosecution, conception, inventorship, and ownership. *Id.* All three named inventors of the '357 Patent also reside in NDCA and developed the patent in NDCA. *Id.* Numerous other third-party witnesses with knowledge of key prior art—including Forescout and multiple prior art authors—all reside in NDCA. § II.D. And NDCA-based ███████ supplies a key component for the functionality accused of infringing the '880 Patent. § II.E. The convenience of these witnesses is of paramount importance to the transfer analysis.

**HPE witnesses**. Virtually all of HPE's U.S.-based employees with relevant knowledge of the prior art and accused products work from northern California—in Sunnyvale, San Jose, or Roseville. §§ II.C-D; Ex. 15; Ex. 29; Ex. 22. A table comparing HPE employees with responsibilities for the charted accused products in NDCA (or nearby Roseville, California) versus EDTX demonstrates the stark asymmetry in locations:

| | NDCA+ | EDTX |
|---|:---:|:---:|
| **SRX** | | |
| Product Management | ▮ | ▮ |
| Engineering | █ | ▮ |
| Marketing | ▮ | ▮ |
| Finance | ▮ | ▮ |

**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 10**

| | | |
|---|---|---|
| Customer Service & Support | ██████ | █ |
| **CX** | | |
| Product Management | ██ | █ |
| Engineering | ██ | █ |
| Marketing | █ | █ |
| Finance | █ | █ |
| Customer Service & Support | ██ | █ |
| **ClearPass** | | |
| Product Management | █ | |
| Engineering | ██ | |
| Marketing | █ | |
| Finance | █ | |
| Customer Service & Support | █ | █ |

Accounting for the uncharted (improperly accused) products in Athena's contentions only compounds the asymmetry—engineering and product management teams for those products includes nearly ██ employees in Sunnyvale or San Jose, and only █ in Texas. *See* § II.C.4.

Indeed, only *two* U.S.-based HPE employees with unique relevant knowledge of the accused products reside outside of northern California—Messrs. Lechner and Asif. *See* § II.C. Mr. Lechner is in Minnesota and would prefer to travel to NDCA, where he frequently travels for business (Lechner Decl., ¶¶ 4-6). Mr. Asif is in Spring, Texas (outside EDTX) and is not expected to testify at trial. The handful of relevant employees in EDTX provide customer support, work remotely, and do not have unique knowledge compared to their California counterparts. Chang Decl., ¶¶ 14, 20; Dhuru Decl., ¶¶ 7-10, 14-15; Ex. 28; Ex. 41.

**Athena witnesses**. HPE is aware of *just one* Athena witness with relevant knowledge—"P. Hardigan"—located about 200 miles from NDCA and nearly 1,800 miles from Marshall, TX. *See* § II.A; Ex. 49; Ex. 50; *see also In re Clarke*, 94 F.4th 502, 514 (5th Cir. 2024) (recognizing that travel of 1,000+ miles for a primary witness imposes a "massive inconvenience").

In short, there is no question that it would be more convenient for the vast majority of potential party and third-party witnesses to attend trial in NDCA rather than EDTX. Transfer to

**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 11**

NDCA would substantially reduce the travel burden, expense, and time away from work for all these witnesses, which strongly favors transfer. *See In re VirtaMove, Corp.*, No. 2025-130, 2025 WL 2618803, at *1 (Fed. Cir. Sept. 11, 2025) (confirming Fifth Circuit has never suggested "that a district court must ignore common-sense and require all witnesses travel a significant distance when transfer would allow a significant number of witnesses to testify near home").

### B. Availability of Compulsory Process to Secure the Attendance of Witnesses

The availability of compulsory process also strongly favors transfer to NDCA. A court may compel attendance of a non-party witness at trial if the witness resides, is employed, or regularly transacts business within 100 miles of the place of trial, or within the state of trial if the witness would not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Simply put, NDCA can compel the attendance of *numerous* relevant third parties that this District cannot.

The relevance of third-party witnesses here is not speculative. Several third parties in NDCA are likely to be trial witnesses, including: (a) *all* named inventors of the '357 Patent, who possess material information about the claimed technology, conception, reduction to practice, inventorship, prosecution—issues that go to the heart of liability, validity, and damages; (b) Fortinet, the recent prior owner of *all* asserted patents, and current owner of products associated with them, who is uniquely positioned to provide evidence regarding valuation, development, and commercialization, prior assertions, invalidity, licensing, and ownership, as well as compliance with the marking statute; (c) ███████, the supplier of a critical component of the functionality accused of infringing the '880 Patent, whose employees in NDCA possess knowledge regarding the design, operation, and integration of that component; and (d) numerous knowledgeable prior artists, with evidence relating to prior art systems and publications. *See* §§ II.D-E; App. A.

None of these witnesses have indicated any willingness to attend trial in EDTX, and they are thus presumed unwilling. *See Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-cv-411-JRG,

**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 12**

2022 WL 2653893, at *3 (E.D. Tex. July 7, 2022) ("When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor.") (cleaned up) (citations omitted). Litigating this matter in a forum that can compel their attendance strongly favors transfer to NDCA.

### C.    Relative Ease of Access to Sources of Proof

This factor also strongly favors transfer. In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer." *In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *2 (Fed. Cir. Jan. 26, 2024) (quoting *Genentech*, 566 F.3d at 1345). Here, that evidence is overwhelmingly located in northern California, *not* Texas. The locus of HPE's work on the accused products—including product management, design and development, marketing, and customer service and support—occurs in NDCA or nearby Roseville. *See* § II.C; App. A. NDCA is where *all* expected HPE witnesses and technical evidence will be, including physical components and CX switching products. *See Honeywell*, 2024 WL 302397, at *2 (recognizing that locations of relevant document custodians remains a meaningful consideration even when documents are electronically accessible); *TikTok*, 85 F.4th at 358 (5th Cir. 2023) ("The question is *relative* ease of access, not *absolute* ease of access." (emphasis in original) (quoting *Radmax*, 720 F.3d at 288)).

By contrast, HPE is unaware of *any* unique source of proof in EDTX—not HPE sources, Athena sources, or third-party sources. There is simply no connection between this case and EDTX. The facts heavily favor transfer.

### D.    All other practical problems

Several practical issues favor transfer. *First*, the case is at a very early stage—months from invalidity contentions and well over a year from *Markman* and trial—with little investment by the Court or parties. Dkt. 29.

---

**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 13**

***Second***, NDCA already has deep substantive familiarity with the '299 Patent, having issued rulings on subject matter eligibility and claim construction. *See* § II.B.3. Indeed, Judge Chen has already invested substantially in that case, holding a tutorial hearing, a *Markman* hearing, issuing a claim construction order, ruling on various motions for summary judgement in 2024, and receiving trial briefs, pretrial conference statements, and motions *in limine* just before the case settled. *See, e.g.*, *id.*; NDCA 3343 Litigation, ECF Nos. 55, 160, 170, 174, 335, 367-375.

By contrast, Athena's other recently filed matters do not weigh against transfer. The *Athena v. Amazon* (No. 7:26-cv-00061-ADA) and *Athena v. Dell* (No. 7:26-cv-00025-ADA) matters are pending in Western District of Texas, meaning there will be parallel proceedings involving the asserted patents in multiple forums irrespective of transfer. The only case filed in this court—*Athena v. Cisco* (No. 2:25-cv-01201-JRG)—involves two different patents, and only one overlapping with this case (the '880 Patent). *See* Ex. 51; Dkt. 22; Dkt. 33. None of the five total patents across the Cisco and HPE cases are in the same family or have the same inventors, and, for the one overlapping patent, Athena accuses entirely different products in the Cisco matter. *See* Dkt. 22; Dkt. 33. Because the HPE and Cisco actions are in their infancy and have very little overlap (in claim construction or discovery), judicial economy considerations should not negate "the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010); *Honeywell*, 2024 WL 302397, at *3.

### E. Local interest factor

NDCA has a compelling local interest in this case. The local interest factor focuses on the "significant connections between a particular venue and ***the events that gave rise to a suit***." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *Apple*, 979 F.3d at 1345 (collecting cases)). Here, the accused products were (and continue to be) designed and developed

**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 14**

in NDCA and in nearby Roseville by HPE employees who are residents of northern California. *See* § II.C. EDTX has no comparable local interest. *See VirtaMove*, 2025 WL 2618803, at *2.

Moreover, none of the patents were developed in Texas or have inventors located in Texas. If anything, the interests of third parties are focused in California. The '357 Patent was developed by NDCA inventors who remain in NDCA today. NDCA-based Fortinet may also have an interest in the present litigation, given its prior assertion of the '299 Patent in NDCA and prior ownership of all asserted patents. This factor again strongly favors transfer.

### F.    Administrative Difficulties Flowing from Court Congestion

This factor is, at most, neutral and cannot independently justify transfer. *See Clarke*, 94 F.4th at 515. Moreover, courts in this District afford the factor no weight where, as here, the plaintiff does not compete in the marketplace and faces no competitive harm requiring expedited resolution. § II.A; *see also Edge Networking Sys. LLC v. Amazon.com, Inc.*, No. 2:24-cv-00887-JRG-RSP, 2026 WL 660570, at *4 (E.D. Tex. Mar. 9, 2026) (citing *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023)); *see also VirtaMove*, 2025 WL 2618803, at *2.

### G.    Familiarity of the Forum with the Governing Law

This factor favors transfer to NDCA. Both EDTX and NDCA are deeply familiar with patent law, but a California federal court is better positioned to apply the California law governing a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ relevant to HPE's license and ownership defenses. *See* Ex. 6, at 34-35; *see Bianco v. Globus Med., Inc.*, No. 2:12-cv-147-JRG, 2012 WL 5610371, at *6 (E.D. Tex. Nov. 15, 2012) (citations omitted) (familiarity with state law at issue favors transfer).

### H.    Avoidance of Conflict of Laws or Application of Foreign Law

This factor is neutral.

### V.    CONCLUSION

HPE respectfully requests that the Court transfer this case to NDCA.

Dated: April 17, 2026

Respectfully submitted,

*/s/ Jennifer H. Doan*
Katharine M. Burke
Samuel L. Kassa
BAKER BOTTS L.L.P.
700 K Street, NW
Washington, DC 20001
Tel: (202) 639-7700
katharine.burke@bakerbotts.com
sam.kassa@bakerbotts.com

Robert L. Maier
BAKER BOTTS L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, NY 10112
Tel: (212) 408-2500
robert.maier@bakerbotts.com

Bethany R. Salpietra
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Tel: (214) 953-6500
bethany.salpietra@bakerbotts.com

Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
Joseph E. Hillman
Texas Bar No. 24149807
Haltom & Doan
2900 St. Michael Drive, Suite 500
Texarkana, TX 75503
Telephone: (903) 255-1000
E-mail: jdoan@haltomdoan.com
E-mail: jthane@haltomdoan.com
E-mail: jhillman@haltomdoan.com

*Attorneys for Defendant Hewlett Packard Enterprise Company*

**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 16**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on this the 17th day of April, 2026 to all counsel of record via email.

/s/ Jennifer H. Doan
Jennifer H. Doan

**CERTIFICATE OF CONFERENCE**

I hereby certify that on April 14, 2026, counsel for Defendant and counsel for Plaintiff met and conferred in compliance with Local Rule CV-7(i).  Plaintiff has indicated that it is opposed to the relief requested in this motion.

/s/ Jennifer H. Doan
Jennifer H. Doan



**HPE'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 – Page 17**